
STATE OF OKLAHOMA
CLEVELAND COUNTY ss.
FILED

DEC 18 2015

In The Office of the
Court Clerk RHONDA HALL

IN THE DISTRICT COURT OF CLEVELAND COUNTY
STATE OF OKLAHOMA

Raed Z. Moutassam, )
    Plaintiff, )
)
vs. )
) Case No. CJ-2015-1510
Oklahoma Department of Corrections, )
Michael Shelite, an individual; )
William Weldon, an individual; )
Curtis McPheeters, an individual; )
Carl Bear, an individual; and )
Michael Addison, an individual, )
    Defendants. )

## PETITION

COMES NOW Plaintiff, Raed Z. Moutassam, for his cause of action against the Defendants, Oklahoma Department of Corrections, Michael Shelite, William Weldon, Curtis McPheeters, Carl Bear, and Michael Addison, alleges and states as follows:

### Parties

1. Raed Z. Moutassam is a resident of Norman, Cleveland County, Oklahoma.

2. Defendant, Oklahoma Department of Corrections is an agency of the State of Oklahoma.

3. The actions alleged in this Petition took place at the Joseph Harp Correctional Center ("JHCC"), in Lexington, Oklahoma, County of Cleveland.

4. Defendant, William Weldon, an individual, was Food Services Manager III at JHCC, and is now Chief of Security, and in the chain of command of Plaintiff.

5. Defendant, Michael Shelite, was Chief of Security at JHCC, and is now Deputy Warden, and in the chain of command of Plaintiff.

6. Defendant, Curtis McPheeters, is Food Services Manager III at JHCC, and is currently Plaintiff's direct supervisor.

7. Defendant, Michael Addison, was Warden at JHCC when some of the events contained in this Petition took place

8. Defendant, Carl Bear, is currently Warden at JHCC.

## Jurisdiction and Venue

9. Plaintiff's claim is for violation of his rights under the Title VII of The Civil Rights Act of 1964, Oklahoma Anti-Discrimination Act, 21 O.S. §1302(A)(1), violation of 42 U.S.C. § 1981, and violation of the Family and Medical Leave Act, 29 U.S.C. § 2611, *et seq.*

10. Venue is proper in this court pursuant to 12 O.S. § 137.

11. Plaintiff has performed any conditions precedent to filing this action by filing a charge with the Equal Employment Opportunity Commission and a "Notice of Rights" was issued on October 15, 2015, and has timely filed this action.

## Statement of Facts

12. Plaintiff is a racial minority and a Muslim male, whose original country of origin is Palestine.

13. Plaintiff is the only employee within Food Service at JHCC who is Muslim and is from Palestine.

14. On or about April 10, 2006, Plaintiff was hired by Defendant, Oklahoma Department of Corrections, to serve as Food Manager I.

15. In 2009, Plaintiff filed a previous discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"), which was resolved at mediation.

16. Since that time, Plaintiff has been subjected to unwelcome verbal harassment from Defendant William Weldon, Defendant Michael Shelite, and Defendant Curtis

McPheeters, who are employed by Defendant. The verbal harassment included derogatory statements towards Plaintiff's religion, domestic relations within his religion, and/or his national origin.

17. The actions by Defendants Weldon, Shelite and McPheeters, were known to Defendants Addison and Bear, and they approved of their actions, and did nothing to stop the continued harassment.

18. In, or around, 2009, the position of Food Manager III at JHCC became open, but was not advertised, in contravention of ODOC's usual policies and procedures, and William Weldon was selected for the position, although, on information and belief, he did not have food service experience or training.

19. On September 11, 2013, William Weldon announced one minute of silence, although no instruction to do this was given for this to the facility as a whole. Plaintiff believes this was done because of his religion, Muslim.

20. On or about June, 2014, two employees reporting to Plaintiff complained to him about sexual harassment and Plaintiff reported these complaints to William Weldon, and Deputy Warden Shelite, however the actions only stopped after Plaintiff went to the Warden of JHCC.

21. On or about July, 2014, Defendant Weldon bypassed Plaintiff, as the immediate supervisor of employees, and gave orders to staff reporting to Plaintiff. No Caucasian supervisors were subjected to the same behavior. Plaintiff reported this, but no action was taken and the hostility shown him by Defendant Weldon continued.

22. On or about June 23, 20145, Defendant Shelite presented to Plaintiff a Letter of Reprimand and told Plaintiff that if he would stop complaining, he would not issue it.

23. After Plaintiff declined to stop standing up for his rights, on or about July 17, 2014, Defendant Weldon gave Plaintiff a letter of reprimand for an incident which no other food service staff were reprimanded, although they had done the same thing. After complaining and providing proof that other non-Muslim and non-Palestinian employees had not been reprimanded, the Warden of JHCC rescinded the reprimand.

24. On or about July 11, 2014, Defendant Weldon told one of Plaintiff's employees that Plaintiff's wife was Muslim and that Muslim men control their wives.

25. On or about August 2014, Plaintiff requested sick leave via email to his supervisor with documentation from a medical professional verifying the medical condition and need for time off, pursuant to ODOC procedures.

26. Defendant, Oklahoma Department of Corrections, denied Plaintiff's requested sick leave and he was given an unauthorized absence even though Plaintiff had sick days available to use. On information and belief, other Caucasian and non-Muslim employees were allowed to take leave on short notice and paid for that leave even though no doctor's notes were provided.

27. Defendant Weldon deducted hours worked from Plaintiff's time sheet, even though Plaintiff was at work. Plaintiff had to go outside of the agency to receive his pay, which was not paid until on or about September 25, 2014, but was due on August 31, 2014.

28. On or about March, 10, 2014, Plaintiff was transferred to another facility, which required longer hours and more physical labor, and believes this was in retaliation for his complaints.

29. On or about November 18, 2014, Plaintiff was interviewed by the FBI while at work concerning allegations that Plaintiff had sent money to Hizbullah and Hamas.

Defendant Weldon was aware that Plaintiff sent money home and Plaintiff believes that Defendant Weldon passed told the FBI that Plaintiff sent money to terrorist groups as retaliation and to harass Plaintiff further because of his religion and national origin.

30. Defendant, Oklahoma Department of Corrections, treated non-Muslim employees preferably compared to Plaintiff. Specifically, Harvey Featherstone, Mary Davila, Omega Barroga, and Jenne Garlinda, requested sick leave in the same fashion and were granted their leave.

31. Plaintiff notified the Department of Corrections Office of Civil Rights about the harassment and disparate treatment, on the basis of his religion and/or nation of origin that he was receiving at work.

32. The harassment has continued since Plaintiff filed this complaint with the EEOC.

33. Inmates were told of the FBI investigation and that Plaintiff was a terrorist and that if the FBI did not get rid of him, they would take care of it. Plaintiff believes this was done by employees of Defendant ODOC.

34. Plaintiff was subject to another interrogation by Internal Affairs of Defendant ODOC, accusing him of writing an anonymous report concerning a sexual relationship between a staff member and an inmate. Plaintiff did not write this, but Internal Affairs said they believed he did because it was written by someone whose native tongue was not English and pointed out the Plaintiff's native tongue was not English.

35. After being transferred to the other facility, Plaintiff received two "cease and desist" letters concerning reports that inmates had complained about him and interactions with the Human Resource Department at JHCC concerning work-related issues.

36. While Plaintiff was at the other facility, someone with keys to his desk removed all of his documents and stole his Quran and other religious items.

37. After being abruptly reassigned to JHCC, he was told by Defendant Shelite that he could not return because of these "cease and desist" letters, even though ODOC policies state that these letters are not formal discipline. Plaintiff believes these "cease and desist" letters were motivated by his complaints of harassment and retaliation.

38. After questioning Defendant Shelite's reasoning, Defendant Shelite then stated that Plaintiff could not return to work because he had too much vacation time, which he was requiring him to use.

39. On or about June 18, 2015, Plaintiff was given another reprimand because he wrote a response to a "cease and desist" letter, although ODOC has no policies saying this is not allowed.

40. Plaintiff began to have medical issues from the stress and went to see his doctor, following procedure for reporting the absence. Plaintiff was told to bring a doctor's note, although other Caucasion and non-Muslim employees are not required to provide a doctor's note for a one-day absence.

41. Plaintiff's doctor took him off work for extended medical leave, which qualified for leave under the Family and Medical Leave Act ("FMLA").

42. Plaintiff went to the Human Resources Department to obtain forms for his doctor for this FMLA-qualifying leave. At that time, he provided his doctor's note for the one-day absence, as requested.

43. Although Plaintiff provided the doctor's note to the Human Resources Department, which said they would forward it to his supervisor, he received another reprimand for not providing a doctor's note.

44. Both of the above reprimands were not given to Plaintiff until after he started his medical leave.

45. When Plaintiff returned to work, his new supervisor, Defendant McPheeters, told him he was not allowed to return without a release from his doctor. Plaintiff could not get in to see his doctor immediately, and his doctor extended his leave for three more days, which included Plaintiff's usual days off.

46. In spite of this, Plaintiff's pay was docked for two days, which were normally his days off, although Plaintiff had sick leave and/or annual leave to cover these absences.

47. When Plaintiff returned to work after his leave, he was told that his days off were changed and he was absent without leave for the days his doctor took him off work

48. Plaintiff's supervisor, Defendant McPheeters, gave him a "Letter of Concern." Defendant McPheeters told Plaintiff that if he quit complaining, he would not issue the "Letter of Concern." The alleged incident referenced in the "Letter of Concern" occurred only a few days after returning from FMLA-qualifying leave at a time Defendant McPheeters was not in the facility.

49. During the meeting concerning this "Letter of Concern," Defendant McPheeters told Plaintiff that "you Muslims are hard-headed and don't listen."

50. On or about September 5, 2015, Plaintiff requested leave for September 18, 2015, because his wife was being sworn in as a citizen of the United States. Plaintiff was verbally told by Defendant McPheeters that he could have the time, but on September

14, 2015, told Plaintiff he could not have that day off and if he did not come to work, he would be disciplined. Defendant McPheeters finally told Plaintiff he could go to the ceremony, but had to return to work immediately after it and wanted an exact time, which was impossible to provide. Defendant McPheeters then again threatened Plaintiff with discipline. During the ceremony Defendant McPheeters called two times and left messages wanting to know where Plaintiff was.

51. Plaintiff believes that other Caucasian, non-Muslim employees are allowed to take days off for occasions that were not as significant as this one.

52. On or about October 28, 2015, Defendant McPheeters, on information and belief, allowed an inmate access to the internet and this inmate obtained Plaintiff's home address, and also threatened Plaintiff stating that Plaintiff was a "terrorist." Plaintiff complained about this and expressed his concern for his safety, but nothing was done.

53. Before Defendants Weldon and McPheeters became Plaintiff's supervisors, Plaintiff had always received excellent performance evaluations.

54. These actions would not have occurred if Plaintiff had not reported the harassment and disruption that he was facing on the basis of his religion and/or nation of origin.

**FIRST CAUSE OF ACTION: TITLE VII OF THE CIVIL RIGHTS ACT**

55. Plaintiff hereby incorporates forgoing paragraphs 1 – 54.

56. This cause of action is directed against the Oklahoma Department of Corrections.

57. Defendant actions in the discrimination and retaliation of Plaintiff due to his religion, race and national origin constitutes a violation of the Title VII of the Civil Rights Act of 1964.

58. As a direct and proximate result of Defendant's actions in terminating the Plaintiff, Plaintiff suffered injuries and damages, including lost wages (past, present and future, including associated benefits) and has suffered mental anguish and emotional distress.

59. Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. §12205, and 21 O.S. §1350(G)(H).

## SECOND CAUSE OF ACTION: VIOLATION OF THE OKLAHOMA ANTI-DISCRIMINATION ACT, 21 O.S. §1302(A)(1)

60. Plaintiff hereby incorporates forgoing paragraphs 1 – 59.

61. This cause of action is directed against the Oklahoma Department of Corrections.

62. Defendant actions in the discrimination and retaliation of Plaintiff due to his religion, race and national origin constitutes a violation of the Oklahoma Anti-Discrimination Act, 21 O.S. § 1302(A)(1).

63. As a direct and proximate result of Defendant's actions against the Plaintiff, Plaintiff suffered injuries and damages, including lost wages (past, present and future, including associated benefits) and has suffered mental anguish and emotional distress.

64. Plaintiff is entitled to an award of attorney fees and costs under the Oklahoma Anti-Discrimination Act.

## THIRD CAUSE OF ACTION: VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

65. Plaintiff hereby incorporates the forgoing paragraphs 1-62.

66. This cause of action is directed towards Defendant, Oklahoma Department of Corrections, and Defendant McPheeters, Defendant Carl Bear, and Defendant Shelite, who are considered employers for purposes of the Family and Medical Leave Act, 29 U.S.C. § 2611, *et seq* ("FMLA").

67. Plaintiff was entitled to FMLA leave due to a medical condition that was verified by a medical professional.

68. Plaintiff was issued a reprimand for not providing a doctor's note for his first day of absence, although doctor's notes are not required for FMLA-qualifying leave, but instead a medical certification from the doctor is required, which was provided.

69. On information and belief, other employees are not required to provide doctor's notes for absences of less than three days.

70. Plaintiff was docked pay for leave that qualified for leave under the FMLA, and, on information and belief, other employees have been allowed time off with pay for similar types of absences.

71. Plaintiff's schedule, which he had for several years, was changed upon his return from FMLA, with no notice. Plaintiff had family obligations which he did not have time to change and the two days he was docked pay for, were his normal days off prior to taking FMLA-qualifying leave.

72. Defendant ODOC also failed to provide Plaintiff with all required notices under the FMLA.

73. Since Plaintiff's return from FMLA-qualifying leave, he has received warnings from Defendant McPheeters for failing to follow procedures that were put in place while he was on this leave and has received warnings for which other employees, who had not taken leave, did not receive.

74. All actions taken against Plaintiff were instituted by Defendants ODOC, McPheeters, Bear, and Shelite.

75. Defendants ODOC, McPheeters, Bear, and Shelite interfered with Plaintiff's rights to take FMLA-qualifying leave and retaliated against Plaintiff for taking leave by docking his pay and requiring him to provide doctor's note for FMLA-qualifying leave, for which a medical certification had been provided.

76. As a result of the actions of Defendants ODOC, McPheeters, Bear, and Shelite, Plaintiff has suffered damages for back pay, liquidated, and other damages herein, as applicable, together with costs, pre- and post-judgment interest and attorney's fees against the Defendants, as provided by the Family and Medical Leave Act, 29 U.S.C. § 2617, and any other relief as may be just and proper.

### THIRD CAUSE OF ACTION: DEPRIVAL OF CONSTITUTIONAL RIGHTS IN VIOLATION OF 42 U.S.C. § 1981

77. Plaintiff hereby incorporates the forgoing paragraphs 1-76.

78. This cause of action is directed towards Defendant ODOC, and Defendants Weldon, Shelite, Addison, Bear, and McPheeters in their individual capacities.

79. Defendants Weldon, Shelite, Addison, Bear, and McPheeters, intentionally and improperly harassed Plaintiff on the basis of his national origin.

80. Defendant Weldon treated Plaintiff less favorably than other employees whose national origin is not Palestine and made derogatory comments concerning Plaintiff's religion to other employees.

81. Defendant Weldon allowed Plaintiff's personal religious items to be removed from his desk and discarded, including Plaintiff's Quran. Defendant Weldon, on information and belief, was well aware of the significance of this.

82. Defendant McPheeters continued the harassment after he became Plaintiff's supervisor, telling Plaintiff that he would not reprimand him if he quit complaining and calling him a "hard-headed Muslim."

83. Defendant McPheeters denied leave to the Plaintiff to attend his wife's naturalization ceremony. Plaintiff's wife is also Muslim and not from the United States and Plaintiff believes that Defendant McPheeters' actions were motivated by the national origin of both Plaintiff and his wife.

84. Defendant Shelite, as supervisor of Defendant Weldon and Defendant McPheeters, approved all actions by Defendant Weldon.

85. Defendant Addison, as warden of JHCC, was aware of the actions of Defendants Weldon, and Shelite and approved these actions, and was aware of information being given to inmates that Plaintiff was under investigation as a terrorist and did nothing to stop this and protect Plaintiff.

86. Defendant Bear, as current warden of JHCC, was aware of the continued actions of Defendants Shelite, Weldon, and McPheeters, and approved these actions, and was aware of that inmates had threatened Plaintiff, and has done nothing to protect Plaintiff.

87. Defendant Bear was aware that an inmate had obtained Plaintiff's home address, and as done nothing to protect Plaintiff.

88. Defendant ODOC was aware of the actions of the other Defendants and have done nothing to stop them.

89. The actions of Defendants ODOC, Shelite, McPheeters, Addison, Bear, and Weldon have created a hostile work environment for Plaintiff and are grounded in Plaintiff's national origin.

WHEREFORE, the Plaintiff, Raed Z. Moutassam, prays for judgment against the Defendant, Oklahoma Department of Corrections, and Defendants Shelite, Weldon, Addison, Bear, and McPheeters by declaring the conduct of the Defendants to be in violation of Plaintiff's statutory rights; awarding the Plaintiff compensatory, liquidated, and other damages herein, as applicable, together with costs, pre- and post-judgment interest and attorney's fees against the Defendants and any other relief as may be just and proper.

Respectfully submitted,

*[signature]*

PATRICIA ANNE PODOLEC, OBA #21325
FOSHEE & YAFFE
P. O. Box 890420
Oklahoma City, OK  73189
Telephone:  (405) 632-6668
Facsimile:  (405) 632-3036
ppodolec@fosheeyaffe.com
*Attorney for the Plaintiff*

ATTORNEY'S LIEN CLAIMED
JURY TRIAL DEMANDED

# VERIFICATION

STATE OF OKLAHOMA )
) ss.
COUNTY OF CLEVELAND )

I, Raed Z. Moutassam, of lawful age, being first duly sworn upon oath, states:

That I am the Plaintiff herein and that I have read the foregoing document, know the contents thereof, and that the matters and things set forth are true and correct according to my best knowledge and belief.

I declare under penalty of perjury that I have examined the document herein, and to the best of my knowledge and belief, it is true, correct, and complete.

*Raed Moutassam*

SUBSCRIBED and SWORN to before me this 16th day of December, 2015.

*Jamie Ann Koonce*
NOTARY PUBLIC

My Commission Expires:
May 15, 2018

Commission #: 14004416

[Notary Seal: JAMIE ANN KOONCE, NOTARY, #14004416, EXP. 05/15/18, STATE OF OKLAHOMA, PUBLIC]

**Exhibit 1**



# IN THE DISTRICT COURT OF CLEVELAND COUNTY
## STATE OF OKLAHOMA

| | |
|---|---|
| Raed Z. Moutassam, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. CJ-2015-1510 |
| Oklahoma Department of Corrections, ) | |
| Michael Shelite, an individual; ) | |
| William Weldon, an individual; ) | STATE OF OKLAHOMA ) S.S. |
| Curtis McPheeters, an individual; ) | CLEVELAND COUNTY ) |
| Carl Bear, an individual; and ) | **FILED** |
| Michael Addison, an individual, ) | |
| Defendants. ) | DEC 18 2015 |

## ENTRY OF APPEARANCE

In The Office of the
Court Clerk RHONDA HALL

To the Clerk of this Court and all parties of record:

Patricia Anne Podolec enters her appearance as counsel in this case for Plaintiff, Raed Z. Moutassam.

I certify that I am admitted to practice in this Court.

12/18/15
DATE

PATRICIA ANNE PODOLEC, OBA # 21325
FOSHEE & YAFFE
P.O. Box 890420
Oklahoma City, OK 73189
Telephone: (405) 632-6668
Facsimile: (405) 632-3036
ppodolec@fosheeyaffe.com